# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **LYNLEY VANSINGEL, MELANIE MEYER, AND JESSIE PALMER,** | § | |
|     *Plaintiffs*, | § | |
| | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No. 4:22-cv-00525-SDJ** |
| **FIRST GUARANTY MORTGAGE** | § | |
| **CORPORATION, AND PACIFIC** | § | |
| **INVESTMENT MANAGEMENT** | § | |
| **COMPANY, INC.,** | § | |
|     *Defendants*. | § | |

## DEFENDANT PACIFIC INVESTMENT MANAGEMENT COMPANY, INC.'S
## <u>RULE 12(b)(6) MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT</u>

Respectfully Submitted,

  */s/ Arthur V. Lambert*
Arthur V. Lambert
Texas Bar No. 11841250
Attorney-in-Charge
Brent Sedge
Texas Bar No. 24082120
FISHER & PHILLIPS LLP
500 North Akard Street, Suite 3550
Dallas, Texas 75201
Telephone: (214) 220-9100
Facsimile: (214) 220-9122
*alambert@fisherphillips.com*
*bsedge@fisherphillips.com*

**ATTORNEYS FOR DEFENDANT
PACIFIC INVESTMENT MANAGEMENT
COMPANY, INC.**

# <u>TABLE OF CONTENTS</u>

**Page**

I.     SUMMARY OF THE ARGUMENT ................................................................. 1

II.    BACKGROUND ........................................................................................... 2

III.   ARGUMENT AND AUTHORITIES .............................................................. 4

    **A.**    Standard for dismissal under Rule 12(b)(6) ............................................. 4

    **B.**    Plaintiffs' Amended Complaint fails to plead a plausible basis for PIMCO's status as an employer. ............................................................... 4

        **1.**    Plaintiffs are not employed by PIMCO. ...................................... 5

        **2.**    Plaintiffs' Amended Complaint pleads insufficient facts to infer that PIMCO and FGMC are an integrated enterprise. ....................................... 6

        **3.**    Plaintiffs have pleaded insufficient facts for joint employer liability. ....... 14

IV.   CONCLUSION AND PRAYER ....................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Walmart Stores, L.L.C.*,
   907 F.3d 170 (5th Cir. 2018) ..............................................................4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................4, 8, 10, 11

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................4, 7

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
   634 F.3d 787 (5th Cir. 2011) .............................................................4

*Haskins v. Davis*,
   2007 WL 9754438 (S.D. Tex. Nov. 7, 2007) .......................................12

*Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*,
   892 F.3d 719 (5th Cir. 2018) .............................................................4

*Lozada-Leoni v. MoneyGram Int'l, Inc.*,
   2020 WL 7000874 (E.D. Tex. Oct. 19, 2020) .......................................6

*Lusk v. Foxmeyer Health Corp.*,
   129 F.3d 773 (5th Cir. 1997) ....................................................... *passim*

*Miles v. American Tel. Tel. Co.*,
   703 F.2d 193 (5th Cir. 1983) .............................................................9

*Mission Consol. Indep. Sch. Dist. v. Garcia*,
   372 S.W.3d 629 (Tex. 2012)..............................................................5

*Muhammad v. Dallas Cty. Cmty. Supervision and Corr. Dep't.*,
   479 F.3d 377 (5th Cir.2007) .........................................................5, 14

*Perry v. Pediatric Inpatient Critical Care Services, P.A.*,
   2020 WL 1248263 (W.D. Tex. Mar. 16, 2020), *aff'd sub nom. Perry v. VHS*
   *San Antonio Partners, L.L.C.*, 990 F.3d 918 (5th Cir. 2021)...................15

*Perry v. VHS San Antonio Partners, L.L.C.*,
   990 F.3d 918 (5th Cir. 2021) ....................................................9, 11, 14

*Schweitzer v. Advanced Telemarketing Corp.*,
   104 F.3d 761 (5th Cir.1997) ............................................................13

*Sullivan v. Schlumberger Ltd.*,
   2022 WL 584038 (E.D. Tex. Feb. 25, 2022) ...................................................................7, 10

*Teague v. Omni Hotels Mgmt. Corp.*,
   2020 WL 7680547 (W.D. Tex. Nov. 24, 2020)...................................................................9

*Tipton v. Northrup Grumman Corp.*,
   242 Fed. App'x. 187 (5th Cir. 2007) ..............................................................................6

*Trevino v. Celanese Corp.*,
   701 F.2d 397 (5th Cir. 1983) .......................................................................... *passim*

*Turner v. Baylor Richardson Med. Ctr.*,
   476 F.3d 337 (5th Cir. 2007) ..............................................................................5

**Statutes**

42 U.S.C. § 2000e(b) ....................................................................................................5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **LYNLEY VANSINGEL, MELANIE MEYER, AND JESSIE PALMER,** | § | |
| *Plaintiffs*, | § | |
| | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No. 4:22-cv-00525-SDJ** |
| **FIRST GUARANTY MORTGAGE CORPORATION, AND PACIFIC INVESTMENT MANAGEMENT COMPANY, INC.,** | § | |
| | § | |
| | § | |
| | § | |
| *Defendants*. | § | |

**DEFENDANT PACIFIC INVESTMENT MANAGEMENT COMPANY, INC.'S**
**RULE 12(b)(6) MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

In accordance with FED. R. CIV. P. 12(b)(6), Defendant Pacific Investment Management Company, Inc. ("Defendant" or "PIMCO") moves the Court to dismiss the claims asserted against it in *Plaintiffs' First Amended Complaint and Jury Demand* ("Amended Complaint") [ECF No. 9] filed by Plaintiffs Lynley VanSingel ("VanSingel"), Melanie Meyer ("Meyer"), and Jessie Palmer ("Palmer") (collectively, "Plaintiffs"). In support, PIMCO shows the following:

**I.**
**SUMMARY OF THE ARGUMENT**

Despite repleading, Plaintiffs' claims against PIMCO should nevertheless be dismissed because the *Amended Complaint* still lacks any well-pleaded facts that would permit the Court to make the reasonable inference that PIMCO is liable to Plaintiffs as their employer. Plaintiffs' *Amended Complaint* fails to allege sufficient facts to show that PIMCO and FGMC are a single enterprise based on interrelation of operations, centralized control of labor relations, common management, or common ownership or financial control. Although they allege that PIMCO directed FGMC to hire one of its former employees as a Senior Consultant, Plaintiffs' do not allege any well-pleaded facts that show PIMCO *actually exercised* control over FGMC's operations

through this Senior Consultant's activities. Plaintiffs' conclusory allegation that PIMCO "had input" through this Senior Consultant does not provide a plausible basis for concluding any centralized control of labor relations between the two entities.

The detailed allegations made in the *Amended Complaint* describing FGMC's role in the specific employment decisions at issue in this lawsuit stand in stark contrast when compared to those describing any *actual involvement* by PIMCO. Apart from Plaintiffs' conclusory and vague allegations (frequently made "upon information and belief"), the *Amended Complaint* lacks any well-pleaded facts that show any involvement by PIMCO in the underlying employment decisions that form the basis of Plaintiffs' claims. Additionally, Plaintiffs fail to make any showing as to how any of the remaining integrated employer factors would overcome the central focus: What entity made the employment decisions at issue?

Likewise, Plaintiffs do not allege sufficient facts that demonstrate PIMCO had the right to, or actually did, control Plaintiffs' conduct or whether it paid their salary, withheld taxes, provided benefits, or otherwise set the terms and conditions of their employment with FGMC. Because they have not pleaded sufficient facts that would provide a plausible basis for holding PIMCO liable as a joint employer or integrated enterprise, Plaintiffs' claims against PIMCO fail to state a claim and should be dismissed.

## II.
## BACKGROUND

Plaintiffs filed their original *Complaint* on June 23, 2022. *Complaint* [ECF No. 1]. PIMCO filed *Defendant Pacific Investment Management Company, Inc.'s Rule 12(b)(6) Motion to Dismiss* [ECF No. 9] on August 9, 2022. Given that Plaintiffs submitted the *Amended Complaint*, the Court denied PIMCO's motion as moot on August 26, 2022 [ECF No. 11].

In the *Amended Complaint*, Plaintiffs bring claims of sex discrimination and retaliation

against Defendant First Guarantee Mortgage Corporation ("FGMC") and PIMCO. Plaintiffs are former employees of Defendant FGMC. *Amended Complaint* ¶¶ 20 (VanSingel), 28 (Meyer), 41 (Palmer). Although they vary by each individual, the gist of Plaintiffs' allegations are that FGMC's leadership subjected them to disparate treatment based on their gender and discharged (or demoted them) in retaliation for making complaints about this perceived treatment. *Amended Complaint* ¶¶ 23-26 (VanSingel), 31-39 (Meyer), 44-64 (Palmer).

Despite containing considerable detail regarding FGMC, Plaintiffs' *Amended Complaint* fails to set forth well-pleaded facts that would permit the Court to infer a probable—rather than a mere possible—basis for PIMCO's liability as an employer. Aside from conclusory allegations that "PIMCO and FGMC operate as joint employers or integrated enterprises[,]" Plaintiffs allege:

- ➢ "PIMCO is a 100% equity owner of FGMC" *Complaint* ¶ 10;

- ➢ "Upon information and belief, PIMCO executives hold two or more seats on the FGMC board of directors and had input into the hiring and firing of FGMC executives. These same executives also authorized the filing of FGMC's bankruptcy." *Id.*;

- ➢ "Upon information and belief, PIMCO knowingly allowed FGMC to be undercapitalized and/or improperly transferred assets out of FGMC causing FGMC to be undercapitalized, resulting in FGMC's recent bankruptcy filing." *Id.* ¶ 11;

- ➢ The "FGMC board, at the request and direction of PIMCO, hired former PIMCO employee Brian Hale, owner of MAP to be a Senior Consultant to the FGMC board." *Id.* ¶ 12;

- ➢ Hale "attended all executive meetings[,]" "provided executive coaching to FGMC's CEO[,]" and referred several FGMC executives to their positions. *Id.* ¶ 13;

- ➢ "Through Mr. Hale, PIMCO had input into the daily operations of FGMC, including employee issues[,]" *Id.* ¶ 14; and

- ➢ "[A]nalysts from PIMCO were sent to FGMC to analyze and improve FGMC's performance[,]" and Plaintiff VanSingel's "team provided multi-day training for these PIMCO analysts who continued to provide guidance on operations and finance to FGMC throughout the time Plaintiffs were employed." *Id.* ¶¶ 16-17.

As set forth below, Plaintiffs' allegations are insufficient to allow a reasonable inference that PIMCO is liable as their employer under Title VII or the Texas Labor Code.

## III.
## ARGUMENT AND AUTHORITIES

**A.      Standard for dismissal under Rule 12(b)(6).**

To withstand dismissal under FED. R. CIV. P. 12(b)(6), Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The facts alleged must 'be enough to raise a right to relief above the speculative level,' but the complaint may survive a motion to dismiss even if recovery seems 'very remote and unlikely.'" *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (*quoting Twombly*, 550 U.S. at 555-56). Facial plausibility is met where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc*., 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679). While a court must accept a plaintiff's allegations as true when ruling on a motion to dismiss, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citations omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 177 (5th Cir. 2018) (*quoting Iqbal*, 556 U.S. at 678). Likewise, a complaint is insufficient where it "tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted) (alterations in original).

**B.      Plaintiffs' Amended Complaint fails to plead a plausible basis for PIMCO's status as an employer.**

The Court should dismiss Plaintiffs' claims because the *Amended Complaint* fails to set

forth a basis for holding PIMCO liable as their employer. Specifically, Plaintiffs' *Amended Complaint* lacks well-pleaded allegations that would support extending employer coverage to PIMCO under either the integrated enterprise or joint employer theories of liability. Where it does address it specifically, the *Amended Complaint*'s allegations against PIMCO are merely labels and conclusions that are not capable of supporting a plausible, rather than possible, basis for holding PIMCO liable as Plaintiffs' employer. Because they have not pleaded an adequate basis for employer coverage against PIMCO, Plaintiff's claims should be dismissed.

### 1.       Plaintiffs are not employed by PIMCO.

Plaintiffs *Amended Complaint* fails to contain any allegations establishing that they were employed by PIMCO. Title VII's coverage[1] generally only extends to an individual's employer. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation omitted) (*citing Oden v. Oktibbeha Cty., Miss.*, 246 F.3d 458, 462 (5th Cir. 2001)). A plaintiff must thus establish that a defendant meets the coverage requirements of Title VII and then, that "an employment relationship exists between the plaintiff and the defendant." *Muhammad v. Dallas Cty. Cmty. Supervision and Corr. Dep't.*, 479 F.3d 377, 380 (5th Cir.2007) (*citing Deal v. State Farm County Mutual Insurance Co.*, 5 F.3d 117, 118 n.2 (5th Cir. 1993)). An employer is defined under Title VII as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person[.]" 42 U.S.C. § 2000e(b). In turn, an employee is defined as "an individual employed by an employer." *Id.* § 2000e(f).

---

[1] Although Plaintiffs' *Amended Complaint* asserts claims of discrimination and retaliation under both Federal and Texas law, Courts interpreting analogous laws under the Texas Labor Code follow a similar analysis for determining whether an entity is an "employer." *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633-34 (Tex. 2012)("Because one of the purposes of the [Texas Commission on Human Rights Act] is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964," we have consistently held that those analogous federal statutes and the cases interpreting them guide our reading of the TCHRA").

Here, Plaintiffs' *Amended Complaint* lacks any allegations that they were ever employed by PIMCO as employees. The *Amended Complaint* alleges that Plaintiff VanSingel was employed as Defendant FGMC's Senior Vice President, Learning & Organizational Development from April 22, 2019, to February 4, 2022. *Amended Complaint* ¶ 20. Moreover, Plaintiff VanSingel asserts a claim for breach of contract in the *Amended Complaint* based on FGMC's alleged breach of an Employment Agreement with her. *Id.* ¶¶ 91-95. Plaintiff Meyer likewise alleges that she was hired by FGMC on February 28, 2020, and later resigned from her employment with the entity on April 1, 2022. *Id.* ¶¶ 28, 38. Finally, Plaintiff Palmer alleges that FGMC hired her on March 1, 2021, and discharged her on January 28, 2022. *Id.* ¶¶ 41, 63.

### 2.    Plaintiffs' Amended Complaint pleads insufficient facts to infer that PIMCO and FGMC are an integrated enterprise.

Plaintiff's *Amended Complaint* fails to allege facts that set forth a plausible basis that PIMCO and FGMC constituted an integrated enterprise. Under Title VII, "'superficially distinct enterprises may be exposed to liability upon a finding that they represent a single, integrated enterprise: a single employer.'" *Tipton v. Northrup Grumman Corp.*, 242 Fed. App'x. 187, 190 (5th Cir. 2007) (*quoting Schweitzer v. Advanced Telemarketing Corp.*, 104 F.3d 761, 763 (5th Cir.1997)). *See also Lozada-Leoni v. MoneyGram Int'l, Inc.*, 2020 WL 7000874, at *22 (E.D. Tex. Oct. 19, 2020) ("Ultimately, the policy underlying the single employer doctrine is the fairness of imposing liability for labor infractions where two nominally independent entities do not act under an arm's length relationship") (citations and quotation marks omitted).

Courts use a four-factor test to determine whether two distinct entities are an integrated enterprise under Title VII. *See Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983). Factors considered by courts in determining whether two entities are an integrated enterprise include: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common

management, and (4) common ownership or financial control." *Sullivan v. Schlumberger Ltd.*, 2022 WL 584038, at *2 (E.D. Tex. Feb. 25, 2022) (Mazzant, J.) (*quoting Trevino*, 701 F.2d at 404). No single factor is determinative: "This analysis ultimately focuses on the question whether the parent corporation was ***a final decision-maker in connection with the employment matters underlying the litigation*** . . . and all four factors are examined only as they bear on this precise issue[.]" *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir. 1997) (citations omitted) (emphasis added).

Despite the *Amended Complaint*'s additional allegations, Plaintiffs have not shown a basis for holding PIMCO liable as their employer that rises above the speculative level. *Twombly*, 550 U.S. at 555-56. As set forth below, Plaintiffs' allegations concerning PIMCO's relationship with FGMC do not meet the *Sullivan* factors and demonstrate no more than the mere possibility of its employer status under Title VII—insufficient to meet *Iqbal*'s probability requirement. Accordingly, Plaintiffs have not pleaded sufficient allegations to hold PIMCO liable as their employer and their *Amended Complaint* should be dismissed.

> a. <u>Interrelation of operations.</u>

The *Amended Complaint* lacks any well-pleaded facts that indicate that PIMCO exercised control over FGMC. *Sullivan*, 2022 WL 584038, at *3 (no genuine dispute as to whether parent company exercise a degree of control over subsidiary that went "beyond the control in the typical parent-subsidiary relationship"). The interrelation of operations factor focuses on whether one entity excessively influenced or interfered with the business operations of the other. *Lusk*, 129 F.3d at 778. The fact that one entity benefitted from the other's activities is irrelevant in determining whether their operations were interrelated: "Attention to detail, not general oversight, is the hallmark of interrelated operations." *Id.* Evidence that two entities operations are interrelated include: (1) one entity's involvement in the other's daily decisions relating to production,

distribution, marketing, and advertising; (2) shared employees, services, records, and equipment; (3) commingled bank accounts, accounts receivable, inventories, and credit lines; (4) one entity's maintenance of the other's books; (5) one entity's issuance of the other's paychecks; and (6) one entity's preparation and filing of the other's tax returns. *Id.*

The *Amended Complaint*'s allegations concerning PIMCO are insufficient to assert a plausible claim that PIMCO and FGMC constituted an integrated enterprise. Plaintiffs allege that PIMCO "had input" into FGMC's daily operations, but these allegations are devoid of any further factual enhancement that would support a showing of this daily involvement by PIMCO itself. *Amended Complaint* ¶ 14; *see Iqbal*, 556 U.S. at 678. Plaintiffs point to actions undertaken by Brian Hale as a Senior Consultant to FGMC's board to show interrelation of operations between FGMC and PIMCO, but even Plaintiffs allege that Hale is a *former* employee of PIMCO. *Id.* ¶ 12 ("at the request and direction of PIMCO, [FGMC] hired *former* PIMCO employee Brian Hale, *owner of MAP* to be a Senior Consultant to the FGMC board") (emphasis added). Plaintiffs then go on to describe the manner in which Hale was involved in FGMC's operations, but the *Amended Complaint* lacks any well-pleaded facts that link Hale's actions with *PIMCO*'s involvement in FGMC's operations. *Id.* ¶ 14 ("[t]hrough Mr. Hale, PIMCO had input into the daily operations of FGMC, including employee issues"). Further, Plaintiffs make it clear that Hale is a current employee of another company, MAP—not PIMCO. *Id.* ¶ 12 ("FGMC board . . . hired former PIMCO employee Brian Hale, owner of MAP to be a Senior Consultant to the FGMC board"). Apart from these attenuated allegations concerning Hale, Plaintiffs allege that PIMCO sent a team of analysts to FGMC in December 2021 "to analyze and improve FGMC's performance," analysts who "continued to provide guidance on operations and finance to FGMC throughout FGMC throughout the time Plaintiffs were employed." *Id.* ¶¶ 16-17.

Plaintiffs' allegations do nothing more than describe the traditional oversight that is present in a putative parent-subsidiary operation[2] and not "a significant departure from the ordinary relationship between a parent and its subsidiary[.]" *Lusk*, 129 F.3d at 778. *See also Miles v. American Tel. Tel. Co.*, 703 F.2d 193, 195 (5th Cir. 1983) ("[n]or does the parent's ownership of 100 percent of the subsidiary's stock alone defeat their separate existence"). Putting aside the conclusory nature of their remaining allegations, Plaintiffs' allegations are not probative of whether PIMCO excessively influenced or interfered with FGMC's operations—the ultimate focus of the interrelated operations factor. *Lusk*, 129 F.3d at 778 ("parent corporation's possession of a controlling interest in its subsidiary entities entitles the parent to the normal incidents of stock ownership, such as the right to select directors and set general policies, without forfeiting the protection of limited liability"); *see also Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 927 (5th Cir. 2021) ("More broadly, there is no evidence that VHS excessively influenced or interfered with the business operations of PICCS, which is the ultimate focus of this factor") (citations and quotation marks omitted) (alterations in original); *Teague v. Omni Hotels Mgmt. Corp.*, 2020 WL 7680547, at *3 (W.D. Tex. Nov. 24, 2020) ("it cannot be considered abnormal for the owner of a hotel chain to conduct a site visit to that hotel chain's properties . . . [n]or can it be considered outside the scope of a typical parent-subsidiary relationship for employees of both companies to participate in company-wide emails or occupy different floors of the same building").

Although Plaintiffs allege that "PIMCO through Hale" attended all executive meetings, provided input into the hiring of C-suite executives and SVS, provided executive coaching,

---

[2] It should be noted that Plaintiffs only allege that "PIMCO is a 100% equity owner of FGMC." *Amended Complaint* ¶ 10. But one entity's alleged equity ownership interest in another entity does not, by itself, establish the existence of a parent-subsidiary relationship. Thus, Plaintiffs' integrated employer allegations and contentions are even more attenuated than the relationships involved *Lusk* or *Trevino*. In any event, the *Amended Complaint* lacks any well-pleaded allegations that show an actual parent-subsidiary relationship between PIMCO and FGMC.

conducted succession planning, supervised operations, and organized restructuring of operations, the *Amended Complaint* is devoid of any factual support for this conclusion. *Amended Complaint* ¶¶ 78, 90; *see Iqbal*, 556 U.S. at 678. The *Amended Complaint* itself alleges that Hale is a *former* PIMCO employee and owner of an entity named "MAP"—there are no further, well-pleaded allegations suggesting that Hale held some agency relationship with PIMCO. *Id.* ¶ 12. "The interrelation of operations element of the single employer test ultimately focuses on whether . . . the parent *actually exercised* a degree of control beyond that found in the typical parent-subsidiary relationship." *Lusk*, 129 F.3d at 778 (emphasis in original). Thus, while Plaintiff's nakedly allege PIMCO had "input" into FGMC's operations via Hale, the *Amended Complaint* lacks any well-pleaded allegations that PIMCO *actually exercised* any control through Hale. *See Lusk*, 129 F.3d at 780 ("Circumstances surrounding the development and execution of the RIF plan show nothing more than that Anderson, Butler, and Estrin were acting as officers of FoxMeyer Drug and FoxMeyer Corporation . . . [o]n the other hand, evidence of NII's involvement in the RIF plan is scant"). As with the officers at issue in *Lusk*, Plaintiffs have not made any showing that Hale performed his consulting services at the direction of and on behalf of PIMCO. *Id.* ("the record supports the only inference that, while involved with the RIF plan, Anderson, Butler, and Estrin were acting in their capacities as directors and officers of the FoxMeyer subsidiaries, not NII").[3]

  b. *Centralized control of labor relations.*

Centralized control of labor relations has been described as the most important factor. *Sullivan*, 2022 WL 584038, *3 (*citing Johnson v. Crown Enterprises, Inc.*, 398 F.3d 339, 343 (5th

---

[3] Supposing Hale had some agency relationship with PIMCO, which the *Amended Complaint* appears to assume but does not plead any facts to establish, the mere existence of such a relationship must be considered in light of the "well established principle that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownerships." *Lusk*, 129 F.3d 779 (*citing United States v. Jon-T-Chem., Inc.*, 768 F.2d 686, 691 (5th Cir. 1985)). To suggest otherwise would turn the nature of limited liability between a parent and its subsidiary on its head and suggest that a parent corporation is liable anytime it recommends (or demands) that the subsidy retain consulting services of an individual, let alone a former employee.

Cir. 2005)). The focus of this factor is determining what entity made the final decisions regarding employment matters related to the person claiming discrimination. *Trevino*, 701 F.2d at 404. In *Trevino*, for example, the Fifth Circuit reversed the district court's determination that there was no centralized control over labor relations amongst two entities because there were "over a hundred documents signed by the parent's managers, authorizing lay-offs, recall, promotions, and transfers of the subsidiary's employees[.]" *Id.* at 400.

Here, there are no well-pleaded allegations in Plaintiffs' *Amended Complaint* that raise a plausible basis for inferring that PIMCO exercised *any* control over FGMC's daily employment decisions, let alone the employment decisions at issue in this lawsuit. Plaintiffs allege, *upon information and belief*, that PIMCO "had input into the hiring and firing of FGMC executives[,]" but do not allege any further factual support for this conclusory statement that would permit the Court to make the reasonable inference that an integrated enterprise exists. *Amended Complaint* ¶ 10; *see Iqbal*, 556 U.S. at 678. Plaintiffs' allegations concerning the activities of Hale, a former PIMCO employee and owner of MAP, as a Senior Consultant to FGMC's board do not show how Hale's consulting role enabled PIMCO's input into FGMC's "employee issues." *Id.* ¶ 14. *See Perry*, 990 F.3d at 928 (company's exercise of contractual right to request physician's termination insufficient to show that it was so involved in the daily employment decisions of other entity to justify treating two entities as single employer). The Court is not required to accept as true such an assertion that lacks any well-pleaded factual support. *Iqbal*, 556 U.S. at 678.

As it relates to the specific employment decisions at issue in this lawsuit, Plaintiffs' allegations concern behavior by *FGMC* employees—no mention is made of involvement by any specific individuals employed by PIMCO. Plaintiff VanSingel directly attributes her termination to FGMC: "VanSingel later learned that the decision to terminate her was made by [FGMC CEO

Samples]." *Amended Complaint* ¶ 26. Plaintiff Meyer likewise "asserts [that] her demotion was a constructive discharge in retaliation for complaining about [FGMC SVP] Simons' gender discriminatory behavior." *Id.* ¶ 39. Plaintiff Palmer similarly alleges that FGMC SVPs "Simons and Jewkes failed to uphold *FGMC's* anti-discrimination policy[.]" *Id.* ¶ 46 (emphasis added). For her part, Plaintiff Palmer reported alleged discriminatory and retaliatory behavior of FGMC's SVPs Simons and Jewkes to FGMC's Human Resources Manager Mills. *Id.* ¶ 56. Thereafter, Palmer alleges, she was terminated by FGMC's Senior Vice President of Sales Paul Graham and HR Manager Mills on January 28, 2022. *Id.* ¶ 63.

Plaintiffs' own allegations thus serve to illustrate that the employment decisions at issue in this lawsuit were made by FGMC employees: No further nexus has been shown between FGMC's actions and any actions by PIMCO. *See Lusk*, 129 F.3d at 779 ("Some nexus to the subsidiary's daily employment decisions must be shown"); *see also Haskins v. Davis*, 2007 WL 9754438, at *4 (S.D. Tex. Nov. 7, 2007) ("plaintiffs do not contend that [managerial employees] acted in behalf of Regis . . . [w]ithout more, the plaintiffs fail to show that Regis was the final decision-maker in the employment matters affecting Haskins"); *Torres v. Liberto Mfg. Co.*, Inc., 2002 WL 2014426, at *5 (N.D. Tex. Aug. 30, 2002), *aff'd*, 67 Fed. App'x. 252 (5th Cir. 2003) ("dispositive of this factor is the undisputed fact that Plaintiff was terminated, not by Liberto Specialty or by Liberto Management, but by her supervisor at Liberto Manufacturing, Mr. Herrera, due to her extended absence from work").

    *c.*    <u>*Common Management.*</u>

The factor of common management likewise does not show an integrated enterprise because Plaintiff's *Amended Complaint* lacks any well-pleaded allegations that would permit the Court to find that PIMCO exercised control over FGMC's employment decisions though any alleged common management. "Common management and ownership are ordinary aspects of a

parent-subsidiary relationship." *Lusk*, 129 F.3d at 778. Courts have thus recognized that "the mere existence of common management and ownership are not sufficient to justify treating a parent corporation and its subsidiary as a single employer." *Id.* (citations omitted). Rather, "[s]ome nexus to the subsidiary's daily employment decisions must be shown." *Id.*

Plaintiffs' allegations in the *Amended Complaint*—upon information and belief—that PIMCO executives held two or more seats on FGMC's board and "knowingly allowed FGMC to be undercapitalized" do not speak to whether PIMCO exercised control over PIMCO's employment decisions, let alone those affecting Plaintiffs. *See Schweitzer*, 104 F.3d at 765 (explaining that "[n]one of the four *Trevino* factors concentrates on common financing, capitalization, or officers . . . *Trevino* instructs us to focus on the control a parent company exercises over the employment decisions of its subsidiary"). While they allege that Hale "referred" several individuals to FGMC for executive positions, Plaintiffs make no showing of how PIMCO itself, rather than Hale, referred these individuals. *Amended Complaint* ¶ 13. Nor does Plaintiffs' allegation that "FGMC executives commonly talked about how Mr. Hale's people/referrals were untouchable" draw any connection to PIMCO. *Id.* Thus, Plaintiffs' argument that "[t]hrough, Mr. Hale, PIMCO had input into the daily operations of FGMC" is not supported by any well-pleaded allegations and is a mere legal conclusion.

### d.   Common ownership or financial control.

Despite their allegation that PIMCO is "a 100% equity owner of FGMC[,]" Plaintiffs fail to plead further factual support to demonstrate that PIMCO's alleged ownership interest is enough to overcome the lackluster showing regarding the other *Trevino* factors. *See Schweitzer*, 104 F.3d at 765 (holding that district court erred by focusing on financing instead of "the control a parent company exercises over the employment decisions of its subsidiary"). As the *Trevino* court explains, courts applying this four-part test have focused on the second factor—centralized control

of labor relations. Courts have repeatedly explained that this factor has been refined to the point that the critical question to be answered is: "What entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Trevino*, 701 F.2d 397, 403 (5th Cir. 1983). Thus, whether Plaintiffs' allegations regarding PIMCO's ownership interest or financial control are well-pleaded, such allegations do not save the otherwise insufficient showing by Plaintiffs that PIMCO had any control or input regarding FGMC's employment decisions, especially the decisions underlying the claims they make in the *Amended Complaint*.

Because they fail to allege any well-pleaded fact that demonstrate an integrated enterprise between PIMCO and FGMC, Plaintiffs' claims against PIMCO must be dismissed for failure to state a claim.

### 3. Plaintiffs have pleaded insufficient facts for joint employer liability.

Plaintiffs' *Amended Complaint* likewise lacks sufficient well-pleaded facts that show a plausible basis for holding PIMCO liable as a joint employer under Title VII. "Joint employer" refers to "two or more employers that are unrelated or that are not sufficiently related to qualify as an integrated enterprise, but that each exercise sufficient control of an individual to qualify as his employer." *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 928 (5th Cir. 2021) (citations omitted) (alterations in original). Courts use a hybrid economic realities/common law control test to determine whether an entity exercises sufficient control over an employee to qualify as an employer. *Muhammad*, 479 F.3d at 380. "The most important component of this test is the right to control the employee's conduct, focusing on whether the employer has the right' to hire, fire, supervise, and set the work schedule of the employee." *Id.* (citations and quotation marks omitted). Factors considered in this analysis include "'whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment'" in determining the economic-realities component of this test. *Id.* (*quoting Deal v. State Farm Cty.*

*Mut. Ins. Co. of Tex.*, 5 F.3d 117, 119 (5th Cir. 1993)).

As with their integrated enterprise theory of liability, Plaintiffs *Amended Complaint* lacks any well-pleaded allegations showing that PIMCO operated as Plaintiffs joint employer with FGMC. To begin, Plaintiffs' assertion that PIMCO "had input into the hiring and firing of FGMC executives" is a conclusory statement that is not supported by any well-pleaded allegations. *Amended Complaint* ¶ 10. Plaintiffs attempt to buttress this conclusory argument with their allegations concerning Hale, but as explained above, the *Amended Complaint* lacks any well-pleaded allegations that draw a connection between the decision-making of FGMC's board and the conclusion that Hale's activities provided PIMCO with "input into the daily operations of FGMC[.]" *Id.* ¶ 14. Indeed, the only connection made by Plaintiffs is the threadbare allegation that Hale was hired by FGMC at the "request and direction" of PIMCO. *Id.* ¶ 12

The upshot is that Plaintiffs fail to plead factual support that demonstrates PIMCO in any manner controlled the conduct of any FGMC employees, let alone FGMC's decision to hire and fire Plaintiffs. *Compare id.* ¶ 10 (alleging PIMCO had input into the "hiring and firing of FGMC executives) *with id.* ¶¶ 26, 39, 63 (specific allegations that the employment decisions at issue in this lawsuit were made by FGMC personnel). *See Perry v. Pediatric Inpatient Critical Care Services, P.A.*, 2020 WL 1248263, at *17 (W.D. Tex. Mar. 16, 2020), *aff'd sub nom. Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918 (5th Cir. 2021) (no joint employer liability because putative employer "did not pay Plaintiff's salary, withhold taxes, or provide benefits, or reimburse expenses, nor did it set the specific terms and conditions of Plaintiff's employment"). While the *Amended Complaint* describes in some detail that individuals referred by Hale were "untouchable" (including individuals who allegedly directed Plaintiffs' terminations), Plaintiffs do not allege that Hale made these referrals so that PIMCO could exercise control over *any* FGMC's employees, let

alone control over Plaintiffs. *Amended Complaint* ¶ 13. Plaintiffs have thus not shown anything more than the mere possibility that Hale's actions were performed so that PIMCO could exercise control over FGMC employees—a showing insufficient to withstand dismissal under Rule 12(b)(6). Given the absence of well-pleaded factual allegations that would support a plausible basis for joint employer liability, Plaintiffs' *Amended Complaint* fails to state a claim and should be dismissed.

## IV.
## CONCLUSION AND PRAYER

For the forgoing reasons, PIMCO prays that the Court grants this *Motion*, dismisses Plaintiffs' claims asserted against PIMCO in the *Amended Complaint* with prejudice, and grants any further relief to which the Court finds PIMCO is justly entitled.

Respectfully Submitted,

  */s/ Arthur V. Lambert*
Arthur V. Lambert
Texas Bar No. 11841250
Attorney-in-Charge
Brent Sedge
Texas Bar No. 24082120
Fisher & Phillips LLP
500 North Akard Street, Suite 3550
Dallas, Texas 75201
Telephone: (214) 220-9100
Facsimile: (214) 220-9122
*alambert@fisherphillips.com*
*bsedge@fisherphillips.com*

**ATTORNEYS FOR DEFENDANT
PACIFIC INVESTMENT MANAGEMENT
COMPANY, INC.**

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing document with the Clerk of Court for the United States District Court for the Eastern District of Texas on September 12, 2022, using the Electronic Case Filing system of the Court. The ECF system will send a "Notice of Electronic Filing" to all attorneys of record:

Emily Stout (*estout@cwl.law*)
Camille Avant (*cavant@cwl.law*)
**CRAWFORD, WISHNEW & LANG PLLC**
1700 Pacific Avenue, Suite 2390
Dallas, Texas 75201
**ATTORNEYS FOR PLAINTIFF
VANSINGEL**

Jane Legler (*jane@nlcemployeelaw.com*)
Christine Neill (*christine@nlceemployeelaw.com*)
Kyla Gail Cole (*kyla@nlceemployeelaw.com*)
Neill Legler Cole PLLC
3300 Oak Lawn Avenue, Suite 425
Dallas, Texas 75219
**ATTORNEYS FOR PLAINTIFFS
MEYER AND PALMER**


  */s/ Arthur V. Lambert*
Arthur V. Lamber