**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXCAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| LYNLEY VANSINGEL, <br> MELANIE MEYER, and <br> JESSIE PALMER <br><br> *Plaintiffs*, <br> v. <br><br> FIRST GUARANTY MORTGAGE <br> CORPORATION, and PACIFIC <br> INVESTMENT MANAGEMENT <br> COMPANY, INC. <br> *Defendants.* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | **CIVIL ACTION NO. 4:22-cv-00525-SDJ** |

**PLAINTIFFS' RESPONSE TO DEFENDANT PACIFIC INVESTMENT MANAGEMENT COMPANY, INC.'S RULE 12(B)(6) MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | Summary | 1 |
| II. | Facts | 1 |
| | A. Plaintiffs pled the following relevant facts in their First Amended Complaint | 1 |
| III. | Arguments and Authorities | 4 |
| | A. 12 (B)(6) Legal Standard | 16 |
| | B. Single Employer/Integrated Enterprise v. Joint Employer | 6 |
| | C. Plaintiffs pled sufficient facts to state a claim against PIMCO under the Single Employer/Integrated Enterprise Doctrine | 7 |
| | D. PIMCO is liable for the actions of Jordan Simons | 19 |
| | E. This Court should allow this case to proceed against PIMCO because the financial and strategic decisions of PIMCO directly resulted in FGMC's Bankruptcy Filing | 20 |
| | F. Plaintiff Should Be Permitted to Cure Any Deficiencies and Allowed Discovery | 22 |
| IV. | Conclusion | 10 |

## **TABLE OF AUTHORITIES**

**CASES**

*Baker v. Putnal* 75 F.3d 190, 196 (5th Cir. 1996) .................................................................... 4

*Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017). .................. 6

*Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc*, 690 F.2d. 489, 505 (5th Cir. 1982 ..... 7

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) ................................. 5

*Doe v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) ........................................... 6

*Garcia v. Elf Atochem N. Am.*, 28 F.3d 446, 450 (5th Cir. 1994) ................................................. 7

*Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009 ................................................................... 4

*Hart v. Bayer Corp.* 199 F.3d 239, 247 n. 6 (5th Cir. 2000) (citations omitted) ......................... 10

*In Stripling v. Jordan Prod. Co., LLC* 234 F.3d 863, 872 (5th Cir. 2000), ................................... 8

*Iqbal*, 556 U.S. at 678 (2009) .................................................................................................. 4,5

*Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) ......................................................... 5

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 140 L. Ed. 2d 201, 118 S. Ct. 998 (1998) ............... 7

*Randall D. Wolcott, MD., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) ........................... 6

*Republican Party v. Martin.*, 980 F.2d 943, 952 (4th Circuit 1992) ............................................ 6

*Salahuddin v. Cuomo.*, 861 F.2d 40, 42 (2nd Cir. 1988) ............................................................. 5

*Sandoval v. Boulder Regional Communications Center (BRCC).*, 388 F.3d 1312, 1323-24 (10th Cir. 2004 ....... 6

*Scanlan v. Tex. A&M Univ*, 343 F.3d 533, 536 (5th Cir. 2003) .................................................. 5

*Skidmore v. Precision Printing and Pkg., Inc.*, 188 F.3d 606, 616-17 (5th Cir. 1999). .................. 6

*Trevino v. Celanese Corp*, 701 F.2d 397, 404 (5th Cir. 1983) .................................................... 7

*Twombly* 550 U.S. at 555 ........................................................................................................ 4

*United States v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 693 (5th Cir. 1985 .................................. 9

*Vance v. Union Planters Corp.*, 279 F.3d 295, 297 (5th Cir. 2002) ............................................. 7

**RULES**

Fed. R. Civ. P. 8(a)(2) ............................................................................................................. 4, 5

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 4, 5

**TO THE HONORABLE JUDGE JORDAN:**

Plaintiffs Lynley VanSingel, Melanie Meyer, and Jessie Palmer (collectively, "Plaintiffs"), by and through the undersigned counsel, file this brief in opposition to Defendant Pacific Investment Management Company, Inc.'s ("PIMCO") 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 14) ("Motion to Dismiss") and would respectfully show the Court as follows:

I. **Summary:**

Plaintiffs' First Amended Complaint states a sufficient claim against PIMCO under the Single Employer/Integrated Enterprise Doctrine to survive Defendant PIMCO's Motion to Dismiss and proceed to the discovery phase of this litigation.

II. **Facts:**

A. **Plaintiffs pled the following relevant facts in their First Amended Complaint (Doc. 9).**

1. PIMCO is a 100% equity owner of First Guaranty Mortgage Corporation ("FGMC"). PIMCO and FGMC operate as joint employers or integrated enterprises. Upon information and belief, PIMCO executives hold two or more seats on the FGMC board of directors and had input into the hiring and firing of FGMC executives. These same executives also authorized the filing of FGMC's bankruptcy. (Doc. 9 at p. 3).

2. Upon information and belief, PIMCO knowingly allowed FGMC to be undercapitalized and/or improperly transferred assets out of FGMC causing FGMC to be undercapitalized, resulting in FGMC's recent bankruptcy filing. *Id.*

3. In mid-2020, approximately two years prior to FGMC's bankruptcy filing, the FGMC board, at the request and direction of PIMCO, hired former PIMCO employee Brian Hale.

   Mr. Hale was the owner of MAP and was hired to be a Senior Consultant to the FGMC board. *Id.*

4. Mr. Hale attended all executive meetings and provided executive coaching to FGMC's CEO - Aaron Samples. Mr. Hale referred Jordan Simons, Tracey Fenton, and Darien Oien to their executive positions at FGMC. FGMC executives commonly talked about how Mr. Hale's people/referrals (*i.e.*, Jordan Simons) were untouchable – employees could not complain about them and they were permitted to have outlandish behavior. *Id.*

5. Through Mr. Hale, PIMCO had input into the daily operations of FGMC, including employee issues. Mr. Hale attempted to provide coaching to Mr. Simons regarding the treatment of his co-workers. *Id.*

6. In May of 2021, Mr. Hale conducted a succession planning exercise for C-Suite & SVPs. He started sending emails to Finance and to Operations, criticizing how they were run. In August and September 2021, Mr. Hale organized the restructuring of all operations and sales compensation plans. (Doc. 9 at pp. 3-4).

7. In December of 2021, Mr. Hale referred Suzy Lindblom to [FGMC's] open position of COO. Ms. Lindholm started working closely with the FGMC board. Around this same time, analysts from PIMCO were sent to FGMC to analyze and improve FGMC's performance. (Doc. 9 at p. 4).

8. Lynley VanSingel's team provided multi-day training for these PIMCO analysts, who continued to provide guidance on operations and finance to FGMC throughout the time that the Plaintiffs were employed. *Id.*

9. Plaintiffs assert that PIMCO's guidance on FGMC's operations and finance directly caused FGMC's financial issues and undercapitalization leading to the bankruptcy filing. *Id.*

10. PIMCO is liable to Plaintiffs as a joint employer because they directed the hiring of Mr. Hale. Indeed, Mr. Hale: worked as a consultant to the FGMC board and directed the hiring of Mr. Simons, protected Mr. Simons from employee complaints, and provided Mr. Simons coaching regarding employee treatment. Additionally, PIMCO, through Mr. Hale, attended all executive meetings, provided executive coaching to FGMC's CEO, conducted succession planning for FGMC's C-Suite & SVPs, supervised the operations of Finance and Operations, organized the restructuring of all operations and sales compensation plans, and, in December of 2021, recommended the hire of Ms. Lindholm (Doc. 9 at p. 18).

11. Further, analysts from PIMCO were sent to FGMC to analyze and improve FGMC's performance and provided guidance on operations and finance to FGMC throughout the time that the Plaintiffs were employed. *Id.*

12. This guidance on operations directly resulted in FGMC's bankruptcy. *Id.*

### III.     Arguments and Authorities:

#### A. 12(B)(6) Legal Standard

Defendant moves for dismissal under Rule 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE, which authorizes certain defenses to be presented via pretrial motions. *See generally* Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss argues that, irrespective of jurisdiction, the complaint fails to assert facts that give rise to legal liability of the defendant. *See Id*. The FEDERAL RULES OF CIVIL PROCEDURE require that each claim in a complaint include "a short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

Rule 12(b)(6) provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted). The Court must accept as true all well-pleaded facts contained in the complaint and view them in the light most favorable to the plaintiffs. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In deciding a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). "The Supreme Court recently expounded upon the *Twombly* standard, explaining that '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Gonzalez*, 577 F.3d at 603 (quoting *Iqbal*, 556 U.S. at 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "It follows, that 'where the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.*

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In determining whether to grant a motion to dismiss, a district court may generally not "go outside the complaint." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). However, a district court may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Id.*

Dismissal pursuant to FED. R. CIV. P. 12(b)(6) is strongly disfavored in light of the liberal pleading policies of the federal rules. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). A pleading that states a claim for relief must contain merely a plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). Dismissal for failure to comply with this provision of the Federal Rules is usually reserved for cases in which the complaint is so confusing, ambiguous, vague, or otherwise unintelligible that its true substance is well disguised. *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2nd Cir. 1988). When a district court reviews a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well pleaded facts as true. *Randall D. Wolcott, MD., P.A. v. Sebelius,* 635 F.3d 757, 763 (5th Cir. 2011). The motion cannot be used to resolve factual issues or the merits of the case. *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Circuit 1992).

This Court's task is to determine whether Plaintiffs have stated a legally cognizable claim that is plausible, not to evaluate Plaintiffs' likelihood of success. *Doe v. Covington Cty. Sch. Dist.,* 675 F.3d 849, 854 (5th Cir. 2012) (internal quotation marks and citation omitted); *see also Body by Cook, Inc. v. State Farm Mut. Auto. Ins.,* 869 F.3d 381, 385 (5th Cir. 2017). Applying these standards, Plaintiffs have stated a claim on which relief may be granted as sufficient facts have been alleged regarding PIMCO's liability pursuant the Single Employer/Integrated Enterprise Doctrine.

**B. Single Employer/Integrated Enterprise v. Joint Employer:**

As an initial matter, the theories of single employer/integrated enterprise and joint employer are often confused. The integrated enterprise theory analyzes whether two nominally separate entities should be treated as a single enterprise, whereas the joint employer theory assumes that the two employers are separate entities but analyzes whether both entities are employers of the individual. Stated another way, the integrated enterprise theory looks at the relationship between two nominally separate entities. The joint employer theory looks at the relationship that two separate entities have with a given employee. *See Sandoval v. Boulder Regional Communications Center (BRCC)*, 388 F.3d 1312, 1323-24 (10th Cir. 2004). The most common example of a joint employer is an employee of a temporary employment agency who is working for another employer on assignment. Courts sometimes use the terms "single employer" and "joint employer" interchangeably as if they mean the same thing. *See*, *e.g. Skidmore v. Precision Printing and Pkg., Inc.*, 188 F.3d 606, 616-17 (5th Cir. 1999). Here, the Single Employer/Integrated Enterprise Doctrine is at issue.

C. **Plaintiffs pled sufficient facts to state a claim against PIMCO under the Single Employer/Integrated Enterprise Doctrine.**

Plaintiffs have pled sufficient facts to state a claim against PIMCO under the Single Employer/Integrated Enterprise Doctrine. In order to hold PIMCO liable under this doctrine, Plaintiffs must establish: (1) an interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. *Garcia v. Elf Atochem N. Am.,* 28 F.3d 446, 450 (5th Cir. 1994), *abrogated on other grounds, Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 140 L. Ed. 2d 201, 118 S. Ct. 998 (1998). The Fifth Circuit and other courts applying this standard in Title VII and related cases have often focused particularly on the second factor: centralized control of labor relations. *Id.* at 407. However, "no

one of the factors is controlling . . . nor need all criteria be present." *Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.*, 690 F.2d. 489, 505 (5th Cir. 1982).

When a lawsuit arises in the context of employment discrimination cases, the primary focus of this analysis is the second factor - whether there is centralized control of labor relations. *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983). The inquiry into which entity made decisions regarding employment matters is a fact intensive determination. *Vance v. Union Planters Corp.*, 279 F.3d 295, 297 (5th Cir. 2002). Fact intensive analyses are not questions that can be resolved on motions to dismiss.

The EEOC has long endorsed the "integrated enterprise" theory to determine whether "the operations of two or more employers are considered so intertwined that they can be considered the single employer of the charging party." EEOC Compliance Manual, Section 2: Threshold Issues, No. 915.003, at 44-45.5 Under the EEOC's interpretation of Title VII, "[t]he separate entities that form an integrated enterprise are treated as a single employer for purposes of both coverage and liability," and "relief can be obtained from any of the entities that form part of the integrated enterprise." *Id.* at 44.[1]

Here, Plaintiffs pleaded evidence of interrelated operations and common management through the common personnel employed by PIMCO, who also serve on the FGMC Board of Directors; the transfer of PIMCO analysts, trained by Plaintiff Vansingel, to work at FGMC shortly before the terminations of the Plaintiffs; and the hiring of consultant Brian Hale to provide operations advice and direction, including on employment matters, at the direction of PIMCO board members. Plaintiffs have also pleaded evidence of common financial control and ownership

---

[1] The Compliance Manual is available at http://www.eeoc.gov/policy/docs/threshold.html

through the fact that, as indicated in FGMC's bankruptcy petition, PIMCO is the 100% equity owner of FGMC.

### D. PIMCO is liable for the actions of Jordan Simons.

All three Plaintiffs' allegations involve the alleged discriminatory and retaliatory actions of Jordan Simons. *See generally,* (Doc.9 at p. 5-13). As such, PIMCO's involvement in the hiring, retention, and training of Simons is particularly relevant to the Court's 12(B)(6) analysis. Specifically, Plaintiffs' allegations that PIMCO instructed FGMC to hire Brian Hale as a management consultant, Mr. Hale's instrumental participation in the decision to hire Jordan Simons and Mr. Hale's provision of coaching to Mr. Simons regarding his poor treatment of co-workers, and evidence that PIMCO controlled key actions underlying each Plaintiff's alleged discrimination and retaliation complaints. Each and every Plaintiff was terminated shortly after she complained about the discriminatory treatment of Mr. Simons. Presumably if PIMCO had not required FGMC to hire Mr. Hale and he had not instructed FGMC to hire Mr. Simons, Mr. Simons would not have been in a place to take the actions against each Plaintiff that form the basis of their respective allegations. Because of Mr. Hale's relationship to PIMCO, FGMC may have felt powerless to terminate Mr. Simons or to stop his discriminatory and retaliatory behavior. Moreover, the fact that PIMCO's hand-picked consultant attempted to coach Mr. Simons on employee treatment places PIMCO's actions controlling the conduct of Mr. Simons' at the heart of each Plaintiff's case. As such, Plaintiffs have plead sufficient facts to overcome 12(b)(6) regarding PIMCO's involvement in the hiring, retention and coaching of Jordan Simons.

### E. This Court should allow this case to proceed against PIMCO because the financial and strategic decisions of PIMCO directly resulted in FGMC's Bankruptcy Filing.

PIMCO had financial control of FGMC and was ultimately responsible for FGMC's bankruptcy. Plaintiffs allege that PIMCO deliberately underfunded or ceased funding FGMC in

2022, leading to the bankruptcy filing and ultimate collapse of FGMC. Plaintiffs also allege that in late 2021, prior to FGMC's collapse and prior to Plaintiffs' respective terminations, PIMCO sent their own employees to work at FGMC to assist with financial and operational issues at FGMC. Where a parent establishes a subsidiary, undercapitalizes it, and dominates it to such an extent that the subsidiary is a mere conduit for the parent's business, then the parent should not be able to shift the risk of loss due to the subsidiary's tortious acts to plaintiffs who have been wronged. *United States v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 693 (5th Cir. 1985).

**F. Plaintiff Should Be Permitted to Cure Any Deficiencies and Allowed Discovery.**

Although Defendant's Motion to Dismiss should be denied in its entirety because it lacks legal merit, if the Court finds there are any deficiencies in Plaintiffs' pleadings or any additional evidence is necessary, Plaintiffs should be given the opportunity to remedy any deficiencies. When a complaint fails to state a claim, a court should generally give an opportunity to amend under Rule 15(a) before dismissing the action with prejudice. As the Fifth Circuit has explained, "[a]lthough a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n. 6 (5th Cir. 2000) (citations omitted). In *Stripling v. Jordan Prod. Co., LLC,* 234 F.3d 863, 872 (5th Cir. 2000), the Fifth Circuit held that Rule 15(a) "evinces a bias in favor of granting leave to amend." (citations omitted). Further, "[u]nless there is a 'substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.'" *Id.*

**IV. Conclusion:**

Plaintiffs were subjected to illegal and unacceptable gender discrimination and retaliation. They pled more than sufficient facts to establish their claims against PIMCO. Defendant's request

for dismissal is not supported by the law or facts. Based on the well-pleaded facts of their complaint and the case law, Plaintiffs ask this Court to deny Defendant's Motion to Dismiss.

Respectfully Submitted,

_____
Jane Legler
Texas Bar No. 03565820
Christine Neill
Texas Bar No. 00796793
Kyla Gail Cole
Texas Bar No. 24033113

Neill Legler Cole PLLC
3300 Oak Lawn Ave. Ste. 425
Dallas, Texas 75219
(214) 748-7777
(214) 748-7778 (facsimiles)
christine@nlcemployeelaw.com
jane@nlcemployeelaw.com
kyla@nlcemployeelaw.com

**Attorneys for Plaintiffs Meyer and Palmer**


CRAWFORD, WISHNEW & LANG PLLC

By: /s/ *Emily Stout*

**Emily Stout**
State Bar No. 24013581
estout@cwl.law
**Camille Avant**
Texas State Bar No. 24084967
cavant@cwl.law

1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500
Facsimile: (214) 602-6551

**Attorneys for Plaintiff VanSingel**

## **CERTIFICATE OF SERVICE**

      On October 14, 2022 this document will be served on Defendant's counsel via the Court's ECF system.

Arthur V. Lambert
Brent Sedge
FISHER & PHILLIPS, LLP
500 North Akard Street, Suite 3550
Dallas, Texas 75201
alambert@fisherphillips.com
bsedge@fisherphillips.com

                                                  By: */s/ Emily Stout*_____
                                                    Emily Stout