UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| LYNLEY VANSINGEL, MELANIE MEYER, AND JESSIE PALMER, *Plaintiffs*, <br><br> v. <br><br> FIRST GUARANTY MORTGAGE CORPORATION, AND PACIFIC INVESTMENT MANAGEMENT COMPANY, INC., *Defendants*. | § § § § § § § § § § § §   Civil Action No. 4:22-cv-00525-SDJ |

**DEFENDANT PIMCO'S REPLY IN SUPPORT OF RULE 12(B)(6)
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

In accordance with Fed. R. Civ. P. 12(b)(6), Defendant Pacific Investment Management Company, Inc. ("Defendant" or "PIMCO") submits *Defendant PIMCO's Reply in Support of Rule 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Complaint* ("Reply"). In support, PIMCO shows the following:

**I.
INTRODUCTION AND SUMMARY**

Despite their protest that PIMCO's *Motion to Dismiss* should be "denied in its entirety" because "it lacks legal merit," it is in fact Plaintiff's *Response* [ECF No. 23] that is meritless. Plaintiffs have failed to identify sufficient, well-pleaded allegations in their *First Amended Complaint* that establish a plausible basis for holding PIMCO liable under an integrated enterprise theory of employer liability under Title VII of the Civil Rights Act of 1964 and Chapter 21 of the Texas Labor Code.[1] Plaintiffs correctly observe the required factors to proceed under this theory of "employer" liability: (1) interrelation of operations, (2) centralized control of labor relations,

---

[1] Based on their *Response*, Plaintiffs have abandoned their joint-employment theory challenged by PIMCO's *Motion to Dismiss*. *See Response* at 6 ("Here, the Single Employer/Integrated Enterprise Doctrine is at issue.")

(3) common management, and (4) common ownership or financial control. *Response* at 6. *See Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983). Plaintiffs again correctly observe that no single "one of the factors is controlling" in deciding whether an integrated enterprise exists, but, in an employment discrimination lawsuit such as this the primary focus is on centralized control of labor relations. *Response* at 7 (*citing Trevino*, 701 F.2d at 404). But Plaintiffs' conclusory arguments in their *Response* and threadbare allegations in the *First Amended Complaint* fail to address the core inquiry in determining an integrated enterprise: "What entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Trevino*, 701 F.2d at 404.

## II.
## REPLY

Plaintiffs assert that the Court's "inquiry into which entity made the decisions regarding employment matters is a fact intensive determination" and such "[f]act intensive analyses are not questions that can be resolved on motions to dismiss[,]" but this simply is not the correct standard in determining PIMCO's *Motion to Dismiss*: The focus is on whether Plaintiffs have alleged a facially-plausible basis for holding PIMCO liable as their "employer." As noted in *Twombly*:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65 (2007) (cleaned up) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). As noted in PIMCO's *Motion to Dismiss* and below, Plaintiffs have failed to do so, and their claims against PIMCO should be dismissed with prejudice.

A.  **Interrelated Operations and Common Management.**

Plaintiffs' argue that they have pleaded sufficient facts regarding the Fifth Circuit's factors

from *Trevino* that focus on interrelation of operations and common management by pointing to allegations concerning common personnel employed by PIMCO that also serve on FGMC's Board of Directors, the "transfer of PIMCO analysists . . . to work at FGMC shortly before the terminations of the Plaintiffs," and the "hiring of consultant Brian Hale to provide operations advice and direction, including on employment matters, at the direction of PIMCO board members." *Response* at 7.

As previously noted, the *First Amended Complaint*'s allegation that "PIMCO executives hold two or more seats on the FGMC board of directors and had input into the hiring and firing of FGMC executives"—made upon information and belief—is not a well-pleaded because it is devoid of any further factual enhancement and conclusory in nature. *First Amended Complaint* ¶ 10. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs' argument regarding PIMCO analysts sent to FGMC in December 2021 "to analyze and improve FGMC's performance," whom Plaintiffs' allege "continued to provide guidance on operations and finance to FGMC throughout FGMC throughout the time Plaintiffs were employed" is likewise insufficient to demonstrate interrelated operations necessary to demonstrate an integrated enterprise. *First Amended Complaint* ¶¶ 16-17. As the Fifth Circuit explained in *Lusk* in the context of an undisputed parent-subsidiary relationship,[2] traditional oversight by a parent over a subsidiary is not a "significant departure from the ordinary relationship" capable of showing an integrated enterprise. *See Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997). The mere fact that Plaintiffs' have alleged that *some* PIMCO analysts were sent to FGMC and *some* PIMCO management board members may also sit on the board of FGMC does not somehow transform the otherwise arms-

---

[2] As previously noted by PIMCO, one entity's alleged equity ownership of another, especially when factually incorrect, does not by itself establish a parent-subsidiary relationship. *Motion to Dismiss* at 14 n.2. Since the integrated enterprise analysis does not confine itself to the parent-subsidiary relationship alone however, PIMCO will focus its attention to Plaintiffs' insufficient showing under the Fifth Circuit's *Trevino* factors.

length relationship between the entities.³ *See Lozada-Leoni v. MoneyGram Int'l, Inc.*, 2020 WL 7000874, at *22 (E.D. Tex. Oct. 19, 2020) ("Ultimately, the policy underlying the single employer doctrine is the fairness of imposing liability for labor infractions where two nominally independent entities do not act under an arm's length relationship") (citations and quotation marks omitted).

As further detailed below, Plaintiffs' allegations concerning Brian Hale—an undisputed third party—do not demonstrate any interrelation of operations because there are no well-pleaded allegations showing how any actions by Hale were done on behalf of (or at the direction of) PIMCO. *See Lusk*, 129 F.3d at 780 ("Circumstances surrounding the development and execution of the RIF plan show nothing more than that Anderson, Butler, and Estrin were acting as officers of [subsidiaries] . . . [o]n the other hand, evidence of [parent's] involvement in the RIF plan is scant"). The *Response* does not address PIMCO's observation that the *First Amended Complaint* makes no factual showing that Hale performed his consulting services at the direction of and on behalf of PIMCO. *Id.* ("the record supports the only inference that, while involved with the RIF plan, Anderson, Butler, and Estrin were acting in their capacities as directors and officers of the FoxMeyer subsidiaries, not NII").

Even if Plaintiffs' naked factual assertion regarding common board membership were well-pleaded (it is not), this assertion would still not demonstrate anything that approaches the excessive influence or interference in FGMC's operations by PIMCO required to hold it liable as an integrated enterprise. *See Lusk*, 129 F.3d at 778 ("parent corporation's possession of a controlling interest in its subsidiary entities entitles the parent to the normal incidents of stock ownership, such as the right to select directors and set general policies, without forfeiting the protection of limited

---

³ The core allegations in Plaintiffs' *First Amended Complaint* all center on Plaintiffs' allegations of disparate treatment and retaliation based on alleged actions by persons undisputedly employed by Defendant FGMC. *See Motion to Dismiss* at 11-12.

**DEFENDANT PIMCO'S REPLY IN SUPPORT OF RULE 12(B)(6)
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT—Page 4**
FP 45464535.2

liability"); *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 927 (5th Cir. 2021) (affirming summary judgment where there was "no evidence that [hospital management company] excessively influenced or interfered with the business operations of [impatient critical care services company], which is the ultimate focus of this factor") (citations and quotation marks omitted) (alterations in original)).

**B.    Centralized Control of Labor Relations.**

Plaintiffs' *Response* appears to point to Hale's actions in the alleged hiring and coaching of Defendant First Guarantee Mortgage Corporation's ("FGMC") Senior Vice President of Retail Sales Jordan Simons ("SVP Simons") as evidence of PIMCO's involvement into the day-to-day employment decisions of FGMC.[4] This argument appears to be premised, somehow, on an assumption that PIMCO recommended (or demanded) that FGMC's board retain Hale's services. *See Response* at 8 (pointing to "Plaintiff's allegations that PIMCO instructed FGMC to hire Brian Hale as a management consultant"). Plaintiffs fail to show, however, that PIMCO required (or had legal authority to require) that FGMC's board to use Hale's consulting services. *Compare Response* at 8 ("[p]resumably if PIMCO had not required FGMC to hire Mr. Hale . . . Simons would not have been in a place to take the actions against each Plaintiff"), *with First Amended Complaint* ¶ 12 (alleging the "FGMC board, at the request and direction of PIMCO, hired [Hale] . . . to be a Senior Consultant to the FGMC board"). Plaintiffs fail to address PIMCO's precise point on this issue in its *Motion to Dismiss*: The *First Amended Complaint*'s allegations "do not show how

---

[4] PIMCO notes that Plaintiffs' *Response* misstates the actual facts pleaded in their operative complaint: Whereas the *First Amended Complaint* alleges that the FGMC board hired Hale "at the request and direction of PIMCO," the *Response* describes this as "Plaintiffs' allegations that PIMCO *instructed* FGMC to hire Brian Hale as a management consultant[.]" *Response* at 8 (emphasis added). Plaintiffs further argue that they have alleged that PIMCO "required FGMC to hire [Hale]" and suggest that FGMC's SVP Simons would not have been in a place to engage in the alleged discriminatory actions against Plaintiffs if "PIMCO had not required FGMC to hire [Hale]." *Id.* Given the imprecision of the *First Amended Complaint*'s allegations, this misstatement is illustrative of the weak nature of Plaintiffs' theory of liability against PIMCO.

Hale's consulting role enabled PIMCO's input into FGMC's "employee issues[,]" let alone those at issue in this lawsuit. *See Motion to Dismiss* at 11. Despite Plaintiffs' misstatement that the *First Amended Complaint* pleads "evidence that PIMCO controlled key actions underlying each Plaintiff's alleged discrimination and retaliation complaints[,]" no such well-pleaded facts have been alleged by Plaintiffs, nor is the Court required to accept as true such an assertion that lacks any well-pleaded factual support. *Iqbal*, 556 U.S. at 678.

Fundamentally, Plaintiffs' have not pointed to any well-pleaded, non-conclusory allegations in the *First Amended Complaint* that draw a nexus between Hale's alleged actions as a third-party consultant employed by Defendant FGMC's board of directors and PIMCO's direct involvement in FGMC's daily employment decisions. Because the *First Amended Complaint* contains no further well-pleaded allegations that would permit the Court to draw the reasonable inference that PIMCO *actually exercised* any control through Hale (or otherwise, such as through SVP Simons) in FGMC's daily employment decisions, Plaintiffs' claims against PIMCO should be dismissed with prejudice.

C.  **Common Ownership or Financial Control.**

In an apparent last-ditch effort, Plaintiffs argue that their allegations concerning PIMCO's financial control over FGMC, and purported actions leading to that entity's recent bankruptcy petition, are sufficient to demonstrate financial control necessary to show an integrated enterprise. *Response* at 8-9. As an initial matter, the *Response*'s assertion that "evidence of common financial control and ownership through the fact that, as indicated in FGMC's bankruptcy petition, PIMCO is the 100% equity owner of FGMC" is blatantly false. *Response* at 8. As stated in the *Corporate Ownership Statement* submitted with FGMC's bankruptcy petition—of which the Court can take judicial notice—the actual equity owner of FGMC is a discrete legal entity named "B2 FIE IV, LLC." *See Corporate Ownership Statement* [ECF No. 1], *In re First Guarantee Mortgage*

*Corporation*, United States Bankruptcy Court for the District of Delaware, Case 22-10584 (submitted June 30, 2022) (courtesy copy attached).

In any event, the *First Amended Complaint* lacks any well-pleaded factual support that bridge the gap beyond this otherwise unremarkable showing of corporate ownership and financial control demonstrative of an integrated enterprise. While the *Response* asserts that Plaintiffs have alleged that PIMCO "deliberately underfunded or ceased funding FGMC in 2022, leading to the bankruptcy filing and ultimate collapse of FGMC[,]" this allegation in the *First Amended Complaint* is conclusory and devoid of further factual enhancement, insufficient to withstand dismissal under FED. R. CIV. P. 12(b)(6). *Iqbal*, 556 U.S. at 678. Plaintiffs' threadbare allegations do not save the otherwise insufficient showing in the *First Amended Complaint* that PIMCO had any control or input regarding FGMC's employment decisions, especially the decisions underlying the claims they make in this lawsuit.

**D.   The Court should dismiss Plaintiffs' claims against PIMCO with prejudice.**

Although they argue that the *First Amended Complaint* pleads sufficient facts to withstand dismissal under RULE 12(b)(6), Plaintiffs also contend that they should be granted leave to amend.[5] The Court should deny this request because it is clear that Plaintiffs' claims against PIMCO are incurably defective. *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal"). Plaintiffs have already amended their complaint once, are represented by multiple, competent

---

[5] Plaintiffs' heading under this argument appears to suggest that they seek leave from the Court to conduct discovery, *see Response* at 9 ("Plaintiff[s] Should Be Permitted to Cure Any Deficiencies and Allowed Discovery"), but PIMCO assumes this request would be denied by the Court regardless. *See Order Denying Plaintiff's Motion for Leave to Conduct Limited Discovery* [ECF No. 22]. Should the Court be inclined to revisit this issue, however, PIMCO is happy to provide briefing as to why such a request should be denied.

counsel, and should not otherwise be permitted to impose any unnecessary burden on PIMCO to defend itself in a matter that has been stayed against the main Defendant, especially when they cannot muster sufficient well-pleaded facts to demonstrate a plausible basis for holding PIMCO liable as an employer under Title VII and Chapter 21 of the Texas Labor Code. *See, e.g.*, *Hernandez v. Tiendas Cuadra US LLC*, Civil Action No. CV H-19-269, 2019 WL 2344726, at *2 (S.D. Tex. June 3, 2019) (leave to amend denied as futile because threadbare allegations by plaintiff "d[id] not support a plausible inference of race or religious discrimination that could have been reasonably expected to grow out of the charge of discrimination"). Plaintiffs' claims against PIMCO should be dismissed with prejudice.

### III.
### CONCLUSION AND PRAYER

For the forgoing reasons, PIMCO prays that the Court grants its *Motion*, dismisses Plaintiffs' claims against PIMCO in the *Amended Complaint* with prejudice, and grants any further relief to which the Court finds PIMCO is justly entitled.

Respectfully Submitted,

 /s/ Brent Sedge
Arthur V. Lambert
Texas Bar No. 11841250
Attorney-in-Charge
Brent Sedge
Texas Bar No. 24082120
FISHER & PHILLIPS LLP
500 North Akard Street, Suite 3550
Dallas, Texas 75201
Telephone: (214) 220-9100
Facsimile: (214) 220-9122
alambert@fisherphillips.com
bsedge@fisherphillips.com

**ATTORNEYS FOR DEFENDANT PACIFIC INVESTMENT MANAGEMENT COMPANY, INC.**

## CERTIFICATE OF SERVICE

 I certify that I electronically filed the foregoing document with the Clerk of Court for the United States District Court for the Eastern District of Texas on October 21, 2022, using the Electronic Case Filing system of the Court. The ECF system will send a "Notice of Electronic Filing" to all attorneys of record:

Emily Stout (*estout@cwl.law*)
Camille Avant (*cavant@cwl.law*)
**CRAWFORD, WISHNEW & LANG PLLC**
1700 Pacific Avenue, Suite 2390
Dallas, Texas 75201
**ATTORNEYS FOR PLAINTIFF VANSINGEL**

Jane Legler (*jane@nlcemployeelaw.com*)
Christine Neill (*christine@nlceemployeelaw.com*)
Kyla Gail Cole (*kyla@nlceemployeelaw.com*)
Neill Legler Cole PLLC
3300 Oak Lawn Avenue, Suite 425
Dallas, Texas 75219
**ATTORNEYS FOR PLAINTIFFS MEYER AND PALMER**

        */s/ Brent Sedge*
        Brent Sedge